UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LISA J. FALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 24-11311-BEM |
| ) | |
| DAVID M. BATTAN, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER ON
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

**MURPHY, J.**

Plaintiff Lisa J. Fall brings this action for unpaid wages against Defendant David M. Battan, former "Executive Director" of the now-defunct Boston Security Token Exchange, LLC ("BSTX"), for which Fall served as CEO. The Court finds insufficient evidence for a jury to conclude that Battan "ha[d] the management of" BSTX under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148. Accordingly, Battan is not subject to individual liability, and the Court will grant his motion for summary judgment.

I. **Background**

  A. **Factual Background**

Fall was the Chief Executive Officer of BSTX from June 16, 2018, to December 1, 2022. Dkt. 48 (Defendant's Statement of Undisputed Material Facts, or "DSOF") ¶ 154; Dkt. 54 ("Fall Aff.") ¶ 1.[1]

Within several years of its inception, BSTX began to have cashflow problems. DSOF ¶ 46. As a result, starting in October 2021, Fall and the BSTX board agreed to defer Fall's salary. *Id.* ¶¶ 47–53.[2] Later, BSTX also borrowed money from a related company.[3] *Id.* ¶¶ 60–63. The promissory notes reflecting those loans expressly stated that their proceeds could not be used to make cash payments to Fall. *See, e.g.*, Dkt. 48-8 at 4. The first of these promissory notes was entered into on March 10, 2022, before Battan joined BSTX. *Id.* at 2, 7.

Battan joined BSTX on April 12, 2022, as its "Executive Chairman." DSOF ¶ 26. The BSTX LLC Agreement states that the Executive Chairman is an officer of the company, authorized to "exercise such powers and perform such duties as determined by the CEO, with the advice and consent of the Board." *See* Dkt. 48-2 at 23.

---

[1] Fall failed to file a direct response to Battan's Statement of Undisputed Material Facts. Under Local Rule 56.1, the Court may therefore deem those facts admitted. Preferring to rule on the merits—and since the Court does not understand there to be substantial disagreement as to the baseline facts presented in this section—the Court has not intentionally penalized Fall for her error. However, the result is that the Court, contrary to the purpose of Local Rule 56.1, has been forced to discern for itself any disputes arising out of Fall's opposition. To the extent the Court may have missed any purported factual dispute, the Court would find that Fall has waived such argument given her procedurally inadequate presentation.

[2] Fall's initial salary was $1,000,000 per year, in addition to benchmarked bonuses. DSOF ¶¶ 22–24. Battan points out that the Massachusetts Wage Act has its origins in ensuring the payment of wages to laborers, rather than executives. Dkt. 47 at 13 (citing *Cook v. Patient Edu, LLC*, 465 Mass. 548, 552 (2013)). In this original use case, the law helps the lowly worker recover against his "unscrupulous employer[]." *See Cook*, 465 Mass. at 552. This is not to say that an executive cannot find protection in the Wage Act, but it does make it somewhat less surprising, in a case like this, that a chief executive officer might have difficulty finding a higher-up to make personally liable.

[3] *See* DSOF ¶¶ 2–10 (laying out BSTX's corporate history and structure).

Fall claims that, "when Battan was hired as Executive Chairman," her "role as CEO diminished." Fall Aff. ¶ 12. Fall further claims that Battan: (1) "directed [her] to provide him with various reports on a regular basis regarding the BSTX business activities," *id.* ¶ 5; (2) that Battan "began engaging directly with the administrative staff" and "finance and sales teams," *id.* ¶¶ 5, 8; (3) that Battan "took charge of negotiating and executing loan arrangements for BSTX," including four promissory notes that, as described above, restricted funds from being used to pay Fall, *id.* ¶ 6; (4) that Battan retained legal counsel and engaged directly with other third parties on BSTX's behalf, *id.* ¶¶ 7, 9–10, 16; and (5) that Battan supplanted Fall in BSTX board meetings, *id.* ¶¶ 13–15. Fall further states that she "had to rely on [Battan] as to when funds would arrive" and thus "had to ask [Battan] when [she] should fire the employees due to an inability to pay wages." *Id.* ¶ 11.

Fall's "deferred" wages were ultimately never paid. *See* DSOF ¶ 154.[4] On October 16, 2022, Fall sent BSTX notice stating that it was in breach of her employment agreement and referencing the possibility of a claim under the Massachusetts Wage Act. *Id.* ¶¶ 150–53. On December 1, 2022, Fall resigned from her position at BSTX. Fall Aff. ¶ 17. Fall subsequently purchased BSTX's assets for $20,000. DSOF ¶ 162.

B.   **Procedural Background**

On April 8, 2024, Fall filed suit, asserting a single claim under the Massachusetts Wage Act.[5] Dkt. 12 at 3–11. Following discovery, on August 14, 2025, Battan moved for summary

---

[4] Fall calculates her total unpaid wages, including unpaid bonus and vacation time, at about $1.4 million. *See* Fall Aff. ¶ 21.

[5] In her complaint, Fall also named Alan P.W. Konevsky, another BSTX board member, Dkt. 12 at 3–11, whom Fall has since voluntarily dismissed, Dkt. 26.

3

judgment. Dkt. 46. On September 26, 2025, the Court held a hearing and took the motion under advisement. Dkt. 57.

## II.  Standard of Review

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"To succeed [on a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Grogan*, 552 F. Supp. 3d at 145 (quoting *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990)) (internal quotations omitted). "The nonmoving party cannot fend off summary judgment unless it makes a competent demonstration that every essential element of its claim or defense is at least trialworthy." *Price v. Gen. Motors Corp.*, 931 F.2d 162, 164 (1st Cir. 1991). "Where the non-moving party bears the ultimate burden of proof, the non-moving party 'must present definite, competent evidence to rebut the motion.'" *Satanic Temple, Inc. v. City of Bos.*, 684 F. Supp. 3d 21, 30 (D. Mass. 2023) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)), *aff'd*, 111 F.4th 156 (1st Cir. 2024).

## III.  Discussion

"The Wage Act requires employers to compensate their employees for earned wages as set out in [Mass. Gen. Laws ch. 149, § 148]." *Segal v. Genitrix, LLC*, 478 Mass. 551, 558, 576–77 (2017) (reversing trial court's denial of judgment notwithstanding the verdict on Wage Act claim against corporate board members). As relevant here, persons liable under the Massachusetts Wage

4

Act include "[t]he president and treasurer of a corporation and any officers or agents having the management of such corporation." Mass. Gen. Laws ch. 149, § 148.  The Massachusetts Supreme Judicial Court has interpreted this language to impose per se personal liability on the president and treasurer of a corporation and de facto liability "on other officers or agents who may not hold these titles but whose significant management responsibilities over the corporation are similar to those performed by a corporate president or treasurer, particularly in regard to the control of finances or the payment of wages."  *Segal*, 478 Mass. at 570.  "[N]either board members nor investors are officers or agents having the management of the company for Wage Act purposes unless they are so empowered by the corporation."  *Id.* at 568.  Where an individual plays multiple roles in a corporation, Wage Act liability is established only according to the individual's officer or agent powers, as "distinct" from their other powers, including those flowing from any board of directors position.  *Id.* at 565 ("The other significant powers the defendants had as board members and investors were distinct from the agency powers provided in the agreement.").

At the outset, the Court notes several assumptions made in Fall's favor.  First, the Court assumes that Battan was an officer of BSTX.[6]  Second, the Court assumes, notwithstanding the express limitation that Battan's officer authority was limited to the "exercise [of] such powers and perform[ance] [of] such duties as determined by [Fall, as CEO]," Dkt. 48-2 at 23, that Battan also had a less formal agency relationship with BSTX and that the Court may roll together such officer-agent powers in assessing whether Battan "ha[d] the management" of BSTX.  Finally, the Court assumes that a Wage Act violation has occurred.[7]

---

[6] As a technical matter, Battan disputes that he was a BSTX officer by operation of the LLC Agreement but states that the Court "need not wade into that issue for the purpose of this motion." Dkt. 47 at 18.

[7] "No person shall by a special contract with an employee or by any other means exempt himself from" the Wage Act's requirements.  Mass. Gen. Laws ch. 149, § 148.  On this basis, the Court assumes as correct Fall's argument that her deferral agreement with BSTX is "irrelevant."  *See* Dkt. 53 at 12.

Even so, Fall has not put forward sufficient evidence for a jury to find that Battan's officer-agent powers gave him "over-all management of the financial and payroll function of the company." *See Segal*, 478 Mass. at 565. This is dispositive because such a finding is required for personal liability to attach. *Id.*

Fall cites two facts that, by any conceivable argument, implicate both Battan and BSTX's payroll but still cannot provide for the necessary inference. The first is that Battan signed four promissory notes, the terms of which prohibited Fall's payment therefrom. Fall. Aff. ¶ 11. But these were clearly signed pursuant to Battan's board powers, not any officer-agent powers: the notes were signed in the board's name, following board votes. DSOF ¶ 131; Dkt. 48-13 at 8; Dkt. 48-14 at 8; Dkt. 48-15 at 8; Dkt. 48-16 at 9.[8] Battan's signature therefore cannot evidence that, as an officer or agent, he "ha[d] the management" of BSTX.

The second is that Fall "relied" on Battan for financial information and so "had to depend on him in assessing whether . . . to terminate . . . employees." Fall Aff. ¶ 11. But *Segal* confirms that this is insufficient, as it would otherwise convert essentially all investment and board-borrowing activity into personal liability under the Wage Act. *See Segal*, 478 Mass. at 566–68; *see also Melendez v. Openrounds, Inc.*, 2024 WL 2940135, at *6 (Mass. Super. June 5, 2024) ("[T]here is nothing especially remarkable about an investor or board member closely monitoring the company in which he or she is substantially invested, and providing informal counsel at the request of the president and CEO.").

The Court sees a meaningful difference between Battan's "effort[s] to fund the enterprise," Dkt. 53 at 20—which "efforts" would usually involve board members and investors—and the

---

[8] Since the notes were executed pursuant to board powers, it does not technically matter whose board powers were invoked for any given note. Nevertheless, it is worth pointing out that the first promissory note was signed by a different chairperson, prior to Battan's arrival. *See* Dkt. 48-8 at 2, 7.

6

"control of finances [and] the payment of wages," *Segal*, 478 Mass. at 570, once those funds are received by the company. This distinction can be observed, among other places, in the single email cited by Fall along with this part of her affidavit testimony.[9] *See* Dkt. 55-14 at 2 (cited in Fall Aff. ¶ 11). In those emails, Fall alerts BSTX's bankruptcy attorney and Battan that new funds had not yet arrived and asks them to "[p]lease instruct on next steps regarding employee pay/termination." *See id*. Battan responds: "My understanding is that [the funds] [are] in process." *Id*. Fall responds: "Okay. When should I terminate the employees?" *Id*. If anything, these emails depict Battan staying within his lane as a board member, relaying information about the board's capital activity, rather than directing any action with respect to the payment of wages. Indeed, in the fuller version, entered into the record by Battan, Battan responds with no specific advice or instruction, just simply: "[p]lease coordinate with [the attorney]." Dkt. 48-21 at 2. The image that emerges is of Fall, rather than Battan, controlling the expenditure of funds within BSTX's control. *See also* DSOF ¶ 19 ("Fall was a signatory on BSTX bank accounts, not Battan.").

The other acts cited by Fall either lie clearly within a corporate board's supervisory purview—Battan's requests for reporting and his transmission of that information to the board, *see* Fall Aff. ¶¶ 5, 13–15. Or else they do not implicate the company's "financial and payroll function," *Segal*, 478 Mass. at 565—generally engaging with staff and third parties, Fall. Aff. ¶¶ 5, 7–10, 16. Thus, they cannot support a finding of personal liability. Fall makes much of Battan's "active role at BSTX," Dkt. 53 at 20, but Wage Act liability does not flow from a board member's (or even an officer's) "active" participation in a corporation. *See Bisson v. Ptech, Inc.*, 2004 WL 2434638, at

---

[9] "[A] 'party's own affidavit, containing relevant information of which [s]he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment.'" *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir. 2000) (quoting *Cadle Co. v. Hayes*, 116 F.3d 957, 961 n. 5 (1st Cir. 1997)). Accordingly, the Court has taken Fall's testimony at face value and looks to the cited exhibit for illustration, rather than necessarily for support.

*2 (Mass. Super. Oct. 19, 2004) ("If any officer or agent who actively participated in a corporation's management were to fall within this definition, then every corporate vice-president and untold other officers and employees would be personally liable for their corporation's failure timely to pay wages to its employees.").

Even when viewed in the light most favorable to Fall, the evidence permits no greater inference than that Battan was an involved officer and board member at BSTX. This is insufficient to sustain personal liability under the Wage Act.

**IV.** **Conclusion**

For the foregoing reasons, Battan's motion for summary judgment is GRANTED.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Dated:  October 3, 2025                           Judge, United States District Court